IN THE UNITED STATES DISTRICT COURT

| | |
|---|---|
| CENTER CAPITAL CORPORATION | * |
| Plaintiff | * Case No. JFM 03 CV 400 |
| v. | * |
| STEVEN TIMCHULA, CHARLES THOMAS AND THE ESTATE OF JAMES BLAKE | * |
| | * |
| Defendants. | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## ANSWER AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Steven Timchula and Charles Thomas, Defendants, by Stephen J. Kleeman, their undersigned attorney, hereby respond to the Plaintiff's Motion for Summary Judgment and for cause, states as follows:

1. On July 11, 2003, the Plaintiff in this matter moved for Summary Judgment. As will be established in both the Answer and Affidavits in Support of the Opposition to the Motion, it is both premature and inappropriate to grant judgment to the Plaintiff at this time. There is a dispute as to material fact which demonstrates the Plaintiff is precluded from obtaining Summary Judgment.

2. This is an action by Center Capital Corporation, Plaintiff, to collect deficiency balances and other monies owed by the individual guarantors in connection with loans made to Environmental Recycling & Waste Reduction, LLC ("ERWR") over the past several years.

3. ERWR filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Maryland on October 18, 2002. It is Case #02-66356. In connection with that case, Plaintiff has filed a Proof of Claim in the amount of $303,576.83. A copy of the Proof of Claim is attached hereto as Exhibit "1".

4. The Proof of Claim includes all of the loans that are included in this case against the

individual guarantors.  (*See*, Schedule of Loans attached to Proof of Claim)

5. The collateral issue in this proceeding, concerns, among other things, a large piece of equipment that had an original contract price of $428,648.17.  The piece of equipment is a Morbark Model 1300 Tubgrinder which is used to grind wood products into pulp and other related products.

6. This piece of equipment was voluntarily turned into the creditor in the Summer of 2002.  The creditor has not sold it.  Indeed, in the Affidavit of Greg Enright in Support of its' Motion (Paragraph 36) it indicates that "Center Capital is in possession of the equipment set forth in Loan Schedule #4 and in order to maximize its net sale proceeds, . . .is preceding to spend an amount likely to be in the vicinity of $80,000 to repair the equipment.  To date, $71,993.68 in costs have been incurred to repair the equipment set forth in Schedule 4."

7. It is clear that not only has the equipment not been sold but there are additional costs that may be incurred.

8. In Mr. Enright's Affidavit, he indicates that Center Capital's claim for this piece of equipment at present is "$296,602.64".  Indeed, the entire judgment sought is $344,520.66 so it is readily apparent that this single piece of equipment is by far and away the largest item that would constitute the Plaintiff's damages.

9. It is clear also that until this piece of equipment is sold that there is no way to judge the total liability of the Defendants.  Moreover, Defendants defense is that a sale has not occurred and/or that the sale may not be commercially reasonable cannot possibly be determined at this juncture.  Hence, the Motion for Summary Judgment is premature.

10. Compliance with the requirements of the Uniform Commercial Code ("Code") is required in order to collect a deficiency judgment.  Section 9-504, Commercial Law Article,

2

specifically requires that the sale of the collateral be conducted in a commercially reasonable manner and that reasonable notice be given to the Debtor. Hence, a secured parties failure to comply with Subsection (3) thus, while it may not bar a deficiency judgment, a creditor who fails to make a reasonable commercial sale or fails to give the requisite notice, may have to overcome the "rebutable presumption" Rule. That Rule requires that the creditor rebut the presumption that the value of the collateral was equal to the debt. Ruden v. Citizens Bank and Trust, 99 Md. App. 605, 638 A.2d 1225 (1994).

11. Disposition of collateral as to whether or not it was a commercially reasonable manner is a question of fact. FDIC v. Rodenberg, 571 F. Supp 455 (D.Md. 1983).

12. In addition, as noted above, the sale has not taken place in this case at all and the collateral has already been held for nearly a year. The fairness and reasonableness of the amounts spent in reconditioning the collateral for sale as alleged by the Plaintiff and the length of time it has taken to do so, all are factors as to whether or not Defendant should be liable for a deficiency decree and/or the creditor should be estopped from asserting a deficiency under the Rebutable Presumption Rule. In any event, it is absolutely premature for the Plaintiff to move for Summary Judgment in this case.

13. The Mobark Tub Grinder was in complete working condition when the Defendants delivered it to Comer Construction in June 2002. It did not need any work when it was delivered and had been actively used by ERWR in their work immediately prior to June 2002. This machine grinds stumps, logs and brush to reduce the size for mulch and other wood products. All of the repairs that are being made by the Plaintiff are not necessary and may have been the result of Plaintiff's neglect in allowing this piece of equipment to remain non-operational, exposed to the elements and other

factors. Exposure to the elements without use contributes to oil contamination, corrosive electronics in much the same fashion as a motor vehicle that is unused and sitting outside would do. Also, it is possible that parts were removed from the ERWR's Grinder as Comar Construction has the same type of equipment.

14. The 2000 Mack Rolloff Truck (Schedule 7) was sold for $55,000.00. There were allegations that the Truck needed repairs and that it was in reality, a 1999 model as opposed to a 2000 model. In any event, sales publications for similar vehicles commonly list this vehicle for $72,000.00 (see attached). Also, this truck was used until the day it was transferred to Comar Construction (June 2002) and no repairs were necessary. The transmission was working fine. There was no damage to the hoist or fuel tank. Also, the tires were fine and may have been replaced by Comar employees as they have similar vehicles in their possession.

15. With respect to all the loans, the calculation of interest is unfair and illegal. The loans each request interest (the Defendant's accountant has calculated the rate at or near 18%). However, merely applying a 6% discount to the remaining payments due involves a double calculation of interest. The interest rate is simply calculated incorrectly and has greatly increased the Plaintiff's claim.

16. Also, the inclusion of attorney fees of $13,000.00 is excessive. This is, in essence, a rather straight forward collection matter. There is no question that Plaintiff has incurred some legal expenses, it appears the present charges are highly inflated. The Court should carefully examine the affidavit and time records to determine the reasonableness and appropriateness of these fees.

17. In addition, the Court has altered the Scheduling Order pursuant to Orders entered on June 5, 2003 and June 24, 2003. The Defendants are intending to call an expert witness regarding

the sale and value of the collateral as well as any of the expenses that have been incurred. Discovery is ongoing at this time and Defendant need not even make its disclosures of experts until September 4, 2003. The discovery deadline is October 21, 2003. Hence, Defendants may well challenge the manner in which this particular piece of collateral has been sold and any expenses for preparing it for sale.

18.   In addition, these same principals would apply to the other pieces of collateral as set forth in Loan Schedules 5, 6 and 7 to the extent that some of this equipment has already been sold, Defendants reserve the right to question whether adequate notice was given and/or whether the sales were commercially reasonable.

19.   The Code requires compulsory disposition of collateral under Section 9-505. Given that the collateral in Schedule 4 has been retained for over a year, it well may be that the Debtor intends to retain the collateral in satisfaction of the debt as set forth in Section 9-505 (2). In any event, it seems incongruous that the creditor who has not yet disposed of the collateral can sue for the entire balance while at the same time holding the collateral in purported exchange for the debt.

20.   In addition, under Section 9-506, the Debtor has the right to redeem the collateral at any time before a sale or other disposition. While the Defendants have not tendered fulfillment of all their obligations it is nevertheless still an open possibility. Moreover, as noted above, the primary obligee is in bankruptcy and therefore depending upon the Plan payments that ultimately are made to creditors, may dispose of this entire matter so again it is extremely premature for the Plaintiff to seek judgment given the situation with the bankruptcy as well as the facts noted above.

21.   In accordance with Federal Rule of Procedure 56(f), due to the reason that the collateral has not yet been sold (the Morbark Grinder) and that discovery is ongoing and the deadline

for our expert disclosure has not yet occurred, Defendants believe that Defendants cannot present by affidavit facts essential to fully justify Defendants opposition at this time and request that the Court defer ruling on the Motion for Summary Judgment pending further discovery, identification of experts and the ultimate sale of the collateral which is at the heart of the Plaintiff's claims.

WHEREFORE, for all the aforegoing reasons, Defendants request that this Court deny Center Capital Corporation's Motion for Summary Judgment.

                                                                                            _____

STEPHEN J. KLEEMAN, ESQUIRE
2 North Charles Street
The B&O Building, Suite 320
Baltimore, Maryland  21201
(410) 752-1220

Attorney for Defendants

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this \_\_\_\_ day of August, 2003, a copy of the Defendants Answer and Opposition to Plaintiff's Motion for Summary Judgment was mailed first-class postage prepaid to J. Preston Turner, 29 West Susquehanna Avenue, Suite 110, Towson, MD 21204.

                                                    _____

STEPHEN J. KLEEMAN, ESQUIRE