IN THE UNITED STATES DISTRICT COURT

| | | |
|---|---|---|
| CENTER CAPITAL CORPORATION | * | |
| Plaintiff | * | Case No. JFM 03 CV 400 |
| v. | * | |
| STEVEN TIMCHULA, CHARLES THOMAS AND THE ESTATE OF JAMES BLAKE | * | |
| | * | |
| Defendants. | | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**AFFIDAVIT IN ANSWER AND OPPOSITION**
**TO MOTION FOR SUMMARY JUDGMENT**

Steven Timchula, one (1) of the Defendants, in proper person, hereby deposes and says as follows:

1. I am the Defendant in the above captioned matter. In my capacity as a Defendant, I have personal knowledge of the matters and facts set forth in this Affidavit. All such statements are true and correct. I am competent to be a witness to these matters.

2. This is an action by Center Capital Corporation, Plaintiff ("Center Capital") to collect a deficiency balance arising from the sale of certain collateral that was voluntarily repossessed and sold.

3. I am a Principal in Environmental Recycling & Waste Reduction, LLC ("ERWR"). ERWR filed a Chapter 11 bankruptcy in the United States Bankruptcy Court for the Northern District of Maryland on October 18, 2002. It is Case No. 02-66356. In connection with that case, Plaintiff has filed a Proof of Claim in the amount of $303,576.83. A copy of the Proof of Claim is attached hereto as Exhibit "1". The Proof of Claim includes all the loans that are included in this case against the individual guarantors. (*See,* Schedule of Loans attached to Proof of Claim).

4. There are four (4) pieces of equipment that are at the center of this case. Each of these pieces of equipment will be discussed in this Affidavit. The first piece of equipment that is at issue is a Morbark Model 1300 Tubgrinder which is used to grind wood products into pulp and other related products.

5. This piece of equipment was voluntarily turned into the Plaintiff in the Summer of 2002. It was turned in to Comar Construction Company, 2100 Slade Lane, Forest Hill, Maryland 21050 at the direction of the Plaintiff. This occurred on or about June 4, 2002.

6. It is conceded in the Affidavit of Greg Enright in Support of the Plaintiff's Motion for Summary Judgment (Paragraph 36) that "Center Capital is in possession of the equipment set forth in Loan Schedule #4 and in order to maximize its net sale proceeds, . . .is preceding to spend an amount likely to be in the vicinity of $80,000 to repair the equipment. To date, $71,993.68 in costs have been incurred to repair the equipment set forth in Schedule 4."

7. It is clear that not only has the equipment not been sold but there are additional costs that may be incurred.

8. In Mr. Enright's Affidavit, he indicates that Center Capital's claim for this piece of equipment alone, at present, is "$296,602.64". Indeed, the entire judgment sought is $344,520.66 so it is readily apparent that this single piece of equipment is by far and away the largest item that would constitute the Plaintiff's damages.

9. It is clear also that until this piece of equipment is sold that there is no way to determine the total liability of the Defendants. Moreover, one of the Defendants defense is that a sale has not occurred and/or that the sale may not be commercially reasonable under these circumstances. Defendant's liability, if any, therefore cannot possibly be determined at this junction and the Motion

3

for Summary Judgment is premature.

10. As noted above, sale has not taken place in this case at all and the collateral has been held for over one year. The fairness and reasonableness of the amounts spent in reconditioning the collateral for sale as alleged by the Plaintiff and the length of time it has taken to allegedly recondition the collateral, are factors as to whether or not Defendants should be liable for a deficiency decree and/or that the creditor should be estopped from asserting a deficiency under the Reasonable Presumption Rule. In any event, it is premature for the Plaintiff to move for Summary Judgment in this case.

11. The Morbark Tub Grinder was in complete working condition when the Defendants delivered it to Comar Construction on or about June 4, 2002. It did not need any work when it was delivered and had been actively used by ERWR in their work immediately prior to June 2002. This machine grinds stumps, logs and brush to reduce the size for mulch and other wood products. All of the repairs that are being made by the Plaintiff are not necessary and may have been the result of Plaintiff's neglect in allowing this piece of equipment to remain non-operational, exposes to the elements and other factors. Exposure to the elements without use contributes to oil contaminants, corrosive electronics in much the same fashion as a motor vehicle that was unused and sitting outside would do. Also, it is possible that parts were removed from ERWR's Grinder as Comar Construction has the same type of equipment. When this piece of equipment left ERWR it did not need a lot of replacement parts and was in operating condition.

12. The 2000 Mac Rolloff Truck (Schedule 7) was sold for $55,000.00. There were allegations that the Truck needed repairs and that it was in reality, a 1999 model as opposed to a 2000 model (See, Exhibits attached to Affidavit of Craig Enright). In any event, sales publications

for similar vehicles commonly list this vehicle for $72,000.00 (see attached Exhibits). Also, this truck was used until the day it was transferred to Comar Construction (June 2002) and no repairs were necessary. The transmission was working fine. There was no damage to the hoist or fuel tank. Also, the tires were fine and may have been replaced by Comar employees as they have similar vehicles in their possession.

13. With respect to all the loans, the calculation of interest is unfair and illegal. The loans each request interest (the Defendant's accountant has calculated the rate at or near 18%). However, merely applying a 6% discount to the remaining payments due essentially involves a double calculation of interest as the payments themselves have a precalculated rate significantly higher then 6%. The interest rate is improperly calculated and has greatly increased the Plaintiff's claim. Plaintiff should be forced to recalculate its claim by removing all of the interest in the remaining payments and then calculating the interest rate on the loans to the date of maturity of the loans in accordance with the requirements of the Uniform Commercial Code.

14. Also, the inclusion of attorney fees of $13,000.00 is excessive. This is, in essence, a rather straight forward collection matter. There is no question that Plaintiff has incurred some legal expenses, but it appears the present charges are highly inflated. The Court should carefully examine the affidavit and time records to determine the reasonableness and appropriateness of these fees.

15. In addition, the Court has altered the Scheduling Order pursuant to Orders entered on June 5, 2003 and June 24, 2003. The Defendants are intending to call an expert witness regarding the sale and value of the collateral as well as any of the expenses that have been incurred. Discovery is ongoing at this time and Defendant need not make its disclosures of experts until September 4, 2003. The discovery deadline is October 21, 2003. Hence, Defendants may well challenge the

manner in which this particular piece of collateral has been sold and any expenses in reconditioning it for sale at the appropriate time. However, until and unless the large piece of collateral (the grinder) is sold, there is no present way to calculate Plaintiff's damages accurately. Moreover, these principals would also apply as noted to the Mark vehicle as well as the other claims made herein.    1 6 .

Because the collateral (Morbark Grinder) has been held for over a year, it may be that the Debtor intends to retain the collateral in satisfaction of the debt as set forth in Maryland Annotated Code, Commercial Law, Section 9-505 (2). Hence, it seems slightly incongruous that the Plaintiff who has not yet disposed of the collateral can sue for the entire balance while at the same time holding the collateral seamlessly forever which may in fact be a retention of the collateral in exchange for the debt.

17.     In addition, under Section 9-506 (Commercial Law), we have the absolute right to redeem the collateral at any time before the sale or other disposition. It is possible that we could exercise our rights to repossess the collateral and therefore the Motion for Summary Judgment again is premature.

18.     Lastly, the primary obligee is the debtor-in-possession, ERWR. Plaintiff's claim may be satisfied in whole or in part through that bankruptcy proceeding and therefore there may be little need to resort to collection of the deficiency judgment against the individual guarantors. This is especially true in that the single largest piece of equipment has yet to be sold by the Plaintiff.

19.     In accordance with Federal Rule of Procedure 56(f), due to the reason that the collateral has not yet been sold (the Morbark Grinder) and that discovery is ongoing and the deadline for our expert disclosure has not yet occurred, we believe that we cannot present by affidavit facts essential to justify our opposition at this time and request that the Court defer ruling on the Motion

for Summary Judgment pending further discovery, identification of experts and the ultimate sale of the collateral which is at the heart of the Plaintiff's claim.

**I DO SOLEMNLY DECLARE AND AFFIRM UNDER PENALTY OF PERJURY THAT THE CONTENTS OF THE AFOREGOING AFFIDAVIT ARE TRUE AND CORRECT.**

_____
Steven Timchula