IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| CENTER CAPITAL CORPORATION, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: JFM-03-400 |
| ) | |
| STEVEN TIMCHULA, CHARLES ) | |
| THOMAS, and the ESTATE OF ) | |
| JAMES BLAKE, ) | |
| ) | |
| Defendants. ) | |

**REPLY OF CENTER CAPITAL CORPORATION TO DEFENDANTS' ANSWER AND OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff Center Capital Corporation ("CENTER CAPITAL"), by and through its attorneys, Pope & Hughes, and for CENTER CAPITAL'S Reply to Defendants' "Answer and Opposition to Motion for Summary Judgment" states as follows:

**I. INTRODUCTION**

The Defendants' "Answer and Opposition to Motion for Summary Judgment" ("ANSWER AND OPPOSITION") disregards applicable law. The Defendants' ANSWER AND OPPOSITION relies upon old Article 9. The Defendants do not appear to be aware of the enactment of revised Article 9 effective July 1, 2001. See MD COML section 9-101 and Conn. ST section 42a-9-101

Further, the ANSWER AND OPPOSITION is filled with facts with which plaintiff agrees; facts which are utterly immaterial or irrelevant; and facts completely

unsupported by Affidavit or the record. No material facts exist which warrant denial of CENTER CAPITAL'S Motion for Summary Judgment.

## II. STANDARD OF REVIEW

As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. See generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs.

\*   \*   \*

Rule 56(e) provides that, when a properly supported motion for summary judgment is made, [FN4] the adverse party "must set forth specific facts showing that there is a genuine issue for trial."

Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986).

In ruling upon a Rule 56 motion, "a District Court must resolve any factual issues of controversy in favor of the non-moving party" only in the sense that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied. That is a world apart from "assuming" that general averments embrace the "specific facts" needed to sustain the complaint. As set forth above, Rule 56(e) provides that judgment "shall be entered" against the nonmoving party unless affidavits or other evidence "set forth specific facts showing that there is a genuine issue for trial." The object of this provision is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit. Cf. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) ("[T]he plaintiff could not rest on his allegations of a conspiracy to get to a jury without 'any significant probative evidence tending to support the complaint'"), quoting *First National Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968). Rather,

2

the purpose of Rule 56 is to enable a party who believes there is no genuine dispute as to a specific fact essential to the other side's case to demand at least one sworn averment of that fact before the lengthy process of litigation continues.

Lujan, Jr. v. National Wildlife Federation, 110 S.Ct. 3177, 3188 (1990)

### III. OBTAINING A DEFICIENCY JUDGMENT AFTER RECOVERY OF EQUIPMENT BUT PRIOR TO THE SALE OF COLLATERAL

#### A. SUMMARY OF DEFENDANTS' ALLEGATIONS AND ARGUMENT

On the factual status of CENTER CAPITAL'S sale of collateral repossessed from Defendants, the Defendants' allegations in the ANSWER AND OPPOSITION are largely correct. Defendants are also correct in stating:

> ¶7. It is clear that not only has the equipment not been sold but there are additional costs that may be incurred.
>
> ¶8. In Mr. Enright's Affidavit, he indicates that Center Capital's claim for this piece of equipment at present is "$296,602.64". Indeed, the entire judgment sought is $344,520.66 so it is readily apparent that this single piece of equipment is by far and away the largest item that would constitute the Plaintiff's damages.

See ANSWER AND OPPOSITION at paragraphs 7 and 8. However, the Defendants' legal conclusions concerning the simultaneous exercise of remedies and the rebuttable presumption rule are not based on facts or are contrary to revised Article 9. The fact that the sale of certain of the repossessed collateral has not yet taken place is utterly immaterial under the facts before this Court.

Defendants are relying upon old Article 9 in explaining why the facts Defendants allege are sufficient to make CENTER CAPITAL'S Motion for Summary Judgment

3

premature and/or inconsistent with the "rebutable presumption rule." Defendant ignores revised Article 9. Defendants' state:

> ¶10. Compliance with the requirements of the Uniform Commercial Code ("Code") is required in order to collect a deficiency judgment. Section 9-504, Commercial Law Article, specifically requires that the sale of the collateral be conducted in a commercially reasonable manner and that reasonable notice be given to the Debtor. Hence, a secured parties failure to comply with Subsection (3) thus, while it may not bar a deficiency judgment, a creditor who fails to make a reasonable commercial sale or fails to give the requisite notice, may have to overcome the "rebutable presumption" Rule. That Rule requires that the creditor rebut the presumption that the value of the collateral was equal to the debt. Ruden v. Citizens Bank and Trust, 99 Md. App. 605, 638 A.2d. 1225 (1994).
>
> ¶11. Disposition of collateral as to whether or not it was a commercially reasonable manner is a question of fact. FDIC v. Rodenberg, 571 F. Supp 455 (D.Md. 1983).
>
> ¶12. In addition, as noted above, the sale has not taken place in this case at all and the collateral has already been held for nearly a year. The fairness and reasonableness of the amounts spent in reconditioning the collateral for sale as alleged by the Plaintiff and the length of time it has taken to do so, all are factors as to whether or not Defendant should be liable for a deficiency decree and/or the creditor should be estopped from asserting a deficiency under the Rebutable Presumption Rule. In any event, it is absolutely premature for the Plaintiff to move for Summary Judgment in this case. The Code requires compulsory disposition of collateral under Section 9-505. Given that the collateral in Schedule 4 has been retained for over a year, it well may be that the Debtor intends to retain the collateral in satisfaction of the debt as set forth in Section 9-505 (2). In any event, it seems incongruous that the creditor who has not yet disposed of the collateral can sue for the entire balance while at the same time holding the collateral in purported exchange for the debt.
>
> ¶13 The Mobark Tub Grinder was in complete working condition when the Defendants delivered it to Comer Construction in June 2002. It did not need any work when it was delivered and had been actively used by ERWR in their work immediately prior to June 2002. This machine grinds stumps, logs and brush to reduce the size for mulch and other wood products. All of the repairs that are being made by the Plaintiff are not necessary and may have been the result of Plaintiff's neglect in allowing this piece of equipment to remain non-operational, exposed to the elements and other factors. Exposure to the elements without use contributes to oil contamination, corrosive electronics in much the same

4

> fashion as a motor vehicle that is unused and sitting outside would do. Also, it is possible that parts were removed from the ERWR's Grinder as Comar Construction has the same type of equipment.

See paragraphs 10-13 of the ANSWER AND OPPOSITION: Defendants ignore revised Article 9, and Defendants misstate or ignore applicable law. Defendants also rely upon immaterial facts.

## B. SIMULTANEOUS EXERCISE OF REMEDIES OF REPOSSESSION AND MONETARY JUDGMENT

Of course, CENTER CAPITAL must act in good faith and not recover more than what is due and owing. Under revised Article 9, the starting point for plaintiff's exercise of its remedies is Section 9-601 of the Uniform Commercial Code, which provides in pertinent part:

> (a) After default, a secured party has the rights provided in this part and, except as otherwise provided in [Section 9-602], those **provided by agreement of the parties**. A secured party:
>
> (1) May reduce a claim to judgment, foreclose, or otherwise enforce the claim, security interest, or agricultural lien by any available judicial procedure; and
> (2) If the collateral is documents, may proceed either as to the documents or as to the goods they cover.
> (b) A secured party in possession of collateral or control of collateral under section [42a-9-104, 42a-9-105, 42a-9-106 or 42a-9-107] has the rights and duties provided in section [42a-9-207].
>
> (c) The rights under subsections (a) and (b) are **cumulative and may be exercised simultaneously.**

See Md Comm. Law Code Ann., § 9-601 and Conn. ST 42a-9-601 [emphasis added, and Conn. citations used for convenience within the quotation from 9-601].

5

Thus, as a starting point, the rights of the Secured Party CENTER CAPITAL are governed by the contract entered into by the secured party with the Defendants, which provides:

> 7. RIGHTS AND REMEDIES. If one or more Events of Default shall occur and be continuing or shall exist then Lender shall have such rights and remedies in respect of the Collateral or any part thereof as are provided by the Uniform Commercial Code ("UCC"), and such other rights and remedies in respect thereof which it may have at law or in equity or under this Agreement, including, but not limited to, the right to: (i) enter any location(s) where the Collateral is located and take possession of it without demand or notice and without prior judicial hearing or legal proceedings, which Borrower hereby expressly waives, (ii) sell all or any portion of the Collateral at any broker's board or at public or private sale, with ten (10) days' prior written notice to Borrower, at such time or times and in such manner and upon such terms, whether for cash or on credit, as Lender, in its sole judgment, reasonably exercised, may determine, ...(v) to apply the proceeds of such sale to all expenses and costs of repossession, storage, insurance, refurbishment and disposition of the Collateral, and any balance of such proceeds toward the payment of the Obligations in such order and manner of application as Lender may, from time to time, elect (and Borrower shall be liable to Lender for any deficiency). In addition to the foregoing; should Lender not have made full and final advancement of funds to or for the benefit of Borrower as contemplated hereby, Lender's obligations to make such advances shall, as between Borrower and Lender, immediately terminate without further notice to Borrower. Borrower, however, shall indemnify and hold Lender harmless in connection with any obligation to make advances theretofore incurred by Lender in connection with any Schedule.
>
> \* \* \*
>
> No remedy referred to in this Section is intended to be exclusive, but each shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lender at law or in equity. The exercise or beginning of exercise by Lender of any one or more of such remedies shall not preclude the simultaneous or later exercise by Lender of any or all such other remedies and all remedies hereunder shall survive termination of this Agreement and/or the Schedule...

Paragraph 7 of the Master Loan and Security Agreement No. 18099.

Further, not only does the contract between Defendants with CENTER CAPITAL provide for the cumulative and simultaneous exercise of remedies, but 9-601 also provides for the cumulative and simultaneous exercise of the secured party's remedies:

> [S]ubsections (a) and (d) make clear that the rights provided in this Part do not exclude other rights provided by agreement.
>
> \* \* \*
>
> Cumulative Remedies. Former Section 9-501(1) provided that the secured party's remedies were cumulative, but it did not explicitly provide whether the remedies could be exercised simultaneously. **Subsection (c) permits the simultaneous exercise of remedies if the secured party acts in good faith.** The liability scheme of Subpart 2 affords redress to an aggrieved debtor or obligor. **Moreover, permitting the simultaneous exercise of remedies under subsection (c) does not override any non-UCC law, including the law of tort and statutes regulating collection of debts, under which the simultaneous exercise of remedies in a particular case constitutes abusive behavior or harassment giving rise to liability.**

See official comments 2 and 5 to Section 9-601 of the Uniform Commercial Code. [Emphasis added]. Thus, in contrast to the ambiguous position of old Article 9 on the issue of simultaneous remedies, under revised Article 9 simultaneous exercise of remedies is allowed so long as the secured party acts in good faith. (Of course, plaintiff CENTER CAPITAL must not be put in a better position than plaintiff otherwise would be had the contract been performed by Defendants.)

The Defendants make the odd argument that "it is clear also that until this piece of equipment is sold there is no way to judge the total liability of the Defendants." See paragraph 9 of ANSWER AND OPPOSITION. Defendants' argument is illogical because the dollar amount of damages is the total liability of the Defendants. The precise amount due and owing to plaintiff by Defendants as a result of Defendants' default is set

forth in CENTER CAPITAL'S Affidavit. (Plaintiff, for the record, notes that paragraph 29 of the Affidavit states that CENTER CAPITAL has repossessed the equipment referenced in loan schedule 6; however, this is apparently incorrect as the equipment is still apparently in the possession of the primary borrower. Who has possession of this equipment has no effect at all on the precise amount of monies due and owing, and the calculation of amounts due and owing under loan schedule 6 are set forth in detail in the Plaintiff's Affidavit. See paragraph 38 of Plaintiff's Affidavit.)

## C. REBUTTABLE PRESUMPTION RULE DOES NOT RAISE ANY ISSUE OF MATERIAL FACT UNDER THE FACTS BEFORE THIS COURT

Defendants argue that the rebutable presumption rule "requires the creditor rebut the presumption that the value of the collateral is equal to the debt." See paragraph 10 of ANSWER AND OPPOSITION.

However, comment number 3 to section 9-626 of revised Article 9 states:

> Subsection (a) establishes the rebuttable presumption rule for transactions other than consumer transactions. Under paragraph (1), the secured party need not prove compliance with the relevant provisions of this Part as part of its prima facie case. If, however, the debtor or a secondary obligor raises the issue (in accordance with the forum's rules of pleading and practice), then the secured party bears the burden of proving that the collection, enforcement, disposition, or acceptance complied.

Under the general allegations made by Defendants there is not a burden on plaintiff to prove the disposition was commercially reasonable. Defendants' statement of an intention to call expert witnesses only accentuates Defendants' failure to submit material facts to defeat Plaintiff's Motion for Summary Judgment.

The sole possible exception to Defendants' failure to introduce a potentially material fact is a reference in paragraph 14 of Defendants ANSWER AND OPPOSITION setting forth a sales price of $55,000.00 for one item of the collateral sold by Plaintiff.

Defendants submit an affidavit that (unspecified unkown) "similar vehicles" sold for $72,000.00. Defendants apparently intend to demonstrate a lack of commercial reasonableness:

> 14. The 2000 Mack Rolloff Truck (Schedule 7) was sold for $55,000.00. There were allegations that the Truck needed repairs and that it was in reality, a 1999 model as opposed to a 2000 model. In any event, sales publications for similar vehicles commonly list this vehicle for $72,000.00 (see attached). Also, this truck was used until the day it was transferred to Comar Construction (June 2002) and no repairs were necessary. The transmission was working fine. There was no damage to the hoist or fuel tank. Also, the tires were fine and may have been replaced by Comar employees as they have similar vehicles in their possession.

See paragraph 14 of ANSWER AND OPPOSITION.

Defendants' opinions and facts are irrelevant or irrelevant because the miscellaneous repossession expenses listed in paragraph 39 of the Affidavit of CENTER CAPITAL are a mere $370.00. Therefore, Plaintiff neither agrees nor disagrees with the facts and speculations set forth by Defendants about problems the truck may or may not have had.

Importantly, pursuant to 9-627(a) the fact that a greater amount could have been obtained by collection, enforcement, disposition or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.

Further, the collateral was also disposed of pursuant to paragraph 7 of the Master Loan & Security Agreement No. 18099 (quoted previously).

## IV. DAMAGE CALCULATIONS

Defendants contend that the damage calculations are "unfair and illegal." See paragraph 15 of ANSWER AND OPPOSITION. However, the damage calculations are set forth in detail at paragraphs 36, 37, 38, and 39 of CENTER CAPITAL'S Affidavit. In addition, those calculations are based upon the express contractual language: See paragraph 7 of Master Loan and Security Agreement No. 18099. Likewise, the discount rate of 6% applicable to future installments to become due, comes from Loan Schedule language on calculating damages.

## V. RIGHT TO REDEEM COLLATERAL

Regarding the Defendants' statement that 9-506 gives the debtor a right to redeem collateral at any time before sale or other disposition, 9-506 says no such thing. 9-506 is about effects of errors or missions on financing statements. Nevertheless, Plaintiff agrees debtor has a right to redeem collateral, but pursuant to 9-623. See Md. Comm. L. Code Ann. § 9-623 and Conn. ST section 42a-9-623. Second, the issue of redemption is utterly irrelevant under this Motion for Summary Judgment. Perhaps Defendants' point is that the deficiency amount is somehow effected by the right to redemption, which is what debtor stated in paragraph 9 of their ANSWER AND OPPOSITION. However as discussed previously, the amount due to Plaintiff is determined precisely by arithmetic as set forth in Plaintiff's Affidavit and as required by contract.

## VI. DEBTOR'S "RESERVATION OF RIGHTS"

Regarding Defendants' statement that "Defendants reserve the right to question whether adequate notice was given and/or whether the sales were commercially reasonable" is meaningless in the context of this Motion for Summary Judgment. Either Defendants present facts sufficient to deny the Motion for Summary Judgment or at least delay a ruling on it, or Defendants do not. No reserving of rights is available to Defendants.

## VII. COMPULSORY DISPOSITION OF COLLATERAL

Regarding the Defendants argument that "the Code requires compulsory disposition of collateral under Section 9-505," this argument apparently relies upon old Article 9, because Section 9-505 of revised Article 9 does not address compulsory disposition of collateral. In any case, as previously discussed, Plaintiff can exercise remedies simultaneously both under revised Article 9 and pursuant to the contract between Defendants and Plaintiff.

Further, in the event of any failure by Plaintiff to act in good faith then, of course, Defendants can invoke 9-625. See MD COML section 9-625 and Conn. ST section 42a-9-625. (Further, as a practical matter, plaintiff would obviously welcome any efforts by Defendants to sell the collateral to reduce the monetary judgment.)

## VIII. ATTORNEY FEES

Regarding the attorney fees, Defendants simply ask the Court to carefully examine the Affidavits and time records to determine the reasonableness and appropriateness of Plaintiffs' fees. Defendants profer not one single example of any unreasonableness in any time charges. Second, if the attorney fee issue somehow arises to a genuine issue of fact, then this Court should award no attorney fees so that summary judgment will be granted.

## IX. BANKRUPTCY OF "PRIMARY" BORROWER

The Defendants make the argument that the "primary obligee is in bankruptcy and therefore depending upon the Plan payments it ultimately are made to creditors, may dispose of this entire matter so again it is extremely premature for the plaintiff to seek judgment given the situation with the bankruptcy..." See paragraph 20 of ANSWER AND OPPOSITION. Importantly, Defendants cite no law and no order of the bankruptcy court. Obviously, to the extent of payments by the personal guarantors, the amounts due in the Bankruptcy Court are diminished. However, the Defendants' postulation of law is mere invention under the facts of this case.

## X. CONCLUSION

### Simultaneous Exercise of Remedies

Defendants cite old Article 9, not revised Article 9 in support of Defendants' position. Under revised Article 9 Plaintiff may simultaneously exercise remedies. Defendants various creative arguments about simultaneously remedies are simply not based on law. Further, under the contract documents, Plaintiff may simultaneously exercise remedies.

### Rebuttable Presumption Rule

Again, Defendants cite old Article 9. However, Plaintiff only has a burden to establish commercial reasonableness if Defendants raise the issue in accordance with this forum's rules and practice. But Defendants only "hard fact" is the opinion that "similar vehicles sold for $72,000.00." First, no sufficient basis for this opinion is given. Second, and more importantly, price alone as a matter of law is not determinative of commercial reasonableness. Third, CENTER CAPITAL sent out notices of private sale (per 9-611(b)) as set forth in its Affidavit. (See paragraph 42 of Affidavit in Support of Motion for Summary Judgment.) Fourth, Center Capital sold the collateral pursuant to the specific terms of the contract documents. Fifth, the other "facts" set forth by Defendant in paragraph 14 of the ANSWER AND OPPOSITION concerning the $55,000.00 sale price of the collateral are irrelevant.

### Miscellaneous Arguments

As set forth above, Defendants' other miscellaneous arguments concerning redemption, reservation of rights, and the like are off point and/or without any basis in law.

Nothing in the record creates genuine issues of material fact warranting denial of the Motion for Summary Judgment. Thus, CENTER CAPITAL is entitled to Judgment as a matter of law for breach of contract against Steven Timchula and Charles Thomas. For the foregoing reasons, Plaintiff respectfully requests that this Court grant Plaintiff's Motion for Summary Judgment.

RESPECTFULLY SUBMITTED,
CENTER CAPITAL CORPORATION:

OF COUNSEL:

*/s/ Kenneth D. Peters*
Kenneth D. Peters, Esq.
ASKOUNIS & BORST, P.C.,
303 E. Wacker Dr., Suite 1000
Chicago, Illinois 60601
Tel: (312) 861-7100
Fax: (312) 861-0022

*/s/ J. Preston Turner*
J. Preston Turner
POPE & HUGHES
The Susquehanna Building
Suite 110
29 W. Susquehanna Avenue
Towson, Maryland 21204
Tel: (410) 494-7777
Fax: (410) 494-1658

## CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of September 2003, a copy the foregoing pleading was served via electronic filing upon:

>Stephen J. Kleeman, Esquire
>2 North Charles Street
>The B&O Building, Suite 320
>Baltimore, Maryland 21201
>
>*Attorney for Defendants*
>
>_____
>J. Preston Turner